UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDITH IGLEASIAS, by power of attorney NANCY IGLESIAS**<br><br>**Plaintiff,**<br><br>v.<br><br>**BOROUGH OF CLIFFSIDE PARK PLANNING BOARD; CHRIS MOUTENOT** in his capacity as Zoning Official of Borough Park; **FRANK BERARDO,** in his capacity as Tax Collector of Borough of Cliffside Park; **JOHN CANDELMO,** in his official capacity as Construction Code Official of Borough of Cliffside Park; and **KENNETH CORCORAN,** in his capacity as Chairman of the Zoning Board of Adjustment of Borough of Cliffside Park; **JOHN DOE and XYZ CORPORATION,** being fictitious and as yet unidentified defendants,<br><br>**Defendants.** | Civ. No. 2:12-07612 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

 *Pro se* Plaintiff Edith Iglesias ("Iglesias"), through her daughter and attorney-in-fact Nancy Iglesias, has filed suit against the Borough of Cliffside Park Planning Board ("the Board") and a number of related individuals.  She alleges that the Board violated her Fifth Amendment rights by approving a variance that allowed construction on what she describes as her "easement lot."  She further alleges that local officials approved shoddy construction work on her home and improperly raised her property taxes.  Defendants have moved for summary judgment and Iglesias has applied for the appointment of *pro bono* counsel.  For the reasons set forth below, Defendants' motions for summary judgment are **GRANTED**[1] and Iglesias' request for *pro bono* counsel is **DENIED**.

---

[1] Frank Berardo, John Candelmo, and Chris Mountenot filed a motion for summary judgment,

## I. BACKGROUND

The following facts are undisputed unless otherwise noted.

### A. The Parties

Plaintiff Edith Iglesias owns a home on a parcel of real estate located at 360 Gorge Road in Cliffside Park, New Jersey. (Statement of Material Facts at ¶1). Defendant Chris Moutenot[2] is the Zoning Official of the Borough of Cliffside Park. He performs enforcement and administrative functions pertaining to municipal zoning laws. *Id.* at ¶3. Defendant Frank Berardo is the Tax Collector of the Borough of Cliffside Park. *Id.* at ¶4. Defendant John Candelmo is the Construction Code Official of the Borough of Cliffside Park. *Id.* at ¶5. Defendant Kenneth Corcoran is the Chairman of the Zoning Board of Adjustment, which is responsible for granting zoning variances. *See id.* at ¶16. While the Board is also a Defendant, it is not responsible for approving variances. (Exhibit to Complt., D.E. 9-12))

### B. Factual Background

In 1999, Iglesias took title to 360 Gorge Road pursuant to a deed from John LoBue. (Statement of Material Facts at ¶1). Her parcel is identified as Lot 9 on the current Tax Map of the Borough of Cliffside Park. *Id.* The southern boundary of Iglesias' property (Lot 9) adjoins with 350 Gorge Road (Lot 8), which Iglesias does not own. *Id.* at ¶6. The residences on Lots 8 and 9 are separated by an area of improved macadam. (Klapper Survey, dated October 30, 1998). The macadam area is connected to a narrow driveway that runs out to Gorge Road. The driveway begins on Lot 9, but as it meets Gorge Road, it crosses into Lot 8. *See id.*

In order to leave her property, Iglesias must cross Lot 8 as the driveway empties out to Gorge Road. *See id.* An indenture recorded in 1958 allows her to do just that, as it provides the owners of Lots 8 and 9 with "a right of raw of ingress and egress over or on that part of the aforesaid paved driveway…which is located on the premises of the property of the other for vehicles and for persons on foot." (Statement of Material Facts at ¶8). Another indenture recognizes "the right of a common driveway" that the owner of Lot 9 may use to access Gorge Road. (Statement of Material Facts at ¶9).

On March 25, 2002, Tamer Borekeiler – the owner of 350 Gorge Road on Lot 8 – obtained height and side yard variances from the Cliffside Park Zoning Board of Adjustment ("ZBA"). *Id.* at ¶16. The variances allowed Borekeiler to build townhouses

---

whereas the Borough of Cliffside Park Planning Board and Kenneth Corcoran filed their own motion. *See* ECF Nos. 30 and 31.

[2] The Complaint does not allege any specific wrongdoing on the part of Chris Moutenot.

out to the large area of macadam that separates the residences on 350 Gorge Road and 360 Gorge Road. *See id.* During the relevant ZBA hearing, Edith Iglesias' daughter, Nancy Iglesias, protested Borekeiler's proposed townhouse project in part because she believed it would encroach on her mother's driveway easement over Lot 8. *Id.* at ¶17. Work on the townhouse project began in 2004 and was completed by July 2005. *Id.* at ¶20. While the townhouse project narrowed the large space of macadam between the residences on 350 Gorge Road and 360 Gorge Road, Iglesias continues to have access to Gorge Road through the driveway that crosses over into Lot 8. *Id*. at ¶23. Even though Nancy Iglesias protested the variance at the ZBA hearing, neither she nor her mother filed a lawsuit or any other legal challenge once the variance was granted. *Id*. at ¶24.

During this period, Iglesias also made improvements to her home. In 1999, the Cliffside Park Planning Board granted her permission to expand the home located on her property. *Id*. at ¶12. Plaintiff employed Nehme Brothers – a construction company located in the area – to build the addition. *Id.* at ¶14. Construction was completed by November 2005. ¶13.

### C. The Instant Action

Iglesias filed this lawsuit on December 12, 2012. The Complaint is difficult to understand, but the Court has endeavored to read it liberally in light of Iglesias' *pro se* status. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). First, Iglesias alleges that by granting the variance for the townhouse project on 350 Gorge Road, certain Defendants violated her Fifth Amendment rights by "encroaching on [her] easement lot." Second, she asserts what appears to be a negligence claim by alleging that her driveway was destroyed and "rebuilt dangerously." Third, she alleges that Defendant John Candelmo "passed inspection on faulty work or construction work that was never performed." Finally, she alleges that "the town appraiser raised [her] property taxes too high." Defendants now move for summary judgment.

## II. MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

Applying the summary judgment standard to Iglesias' claims, the Court concludes that Defendants are entitled to judgment as a matter of law.

### A. Fifth Amendment Claim

According to Iglesias, the variance permitting the townhouse project constituted a Fifth Amendment taking because it encroached on her easement lot. However, because Iglesias failed to pursue appropriate state remedies within the prescribed limitations period, she has forfeited her Fifth Amendment claim.

In *Williamson County Regional Planning Commission v. Hamilton Bank*, the Supreme Court laid out two prerequisites to filing a Fifth Amendment takings claim in federal court. 473 U.S. 172 (1985). First, a takings claims will not be timely until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. Second, a plaintiff cannot assert its takings claim in federal court until it unsuccessfully seeks compensation through state law procedures, so long as those procedures are adequate. *Id.* at 194-95.

The second Williamson prerequisite is at issue here. New Jersey's Eminent Domain Act, N.J.S.A. 20:3-1 *et seq.*, together with state common law, provide a means for Iglesias to seek compensation in state court. *See, e.g, Peduto v. N. Wildwood*, 696 F.Supp. 1004, 1009 (D.N.J. 1988). Moreover, the Third Circuit has concluded that "New Jersey provides an avenue of redress for property owners seeking just compensation." *See SB Bldg. Associates, L.P. v. Borough of Milltown*, 457 Fed.Appx. 154, 157-58 (3d Cir. 2012) (citing *In re Jersey Cent. Power & Light Co.*, 166 N.J. Super. 540, 544 (1979)).

Here, the evidence shows that after the ZBA[3] approved the variance, Iglesias never sought compensation through the procedures established under New Jersey law. (N.

---

[3] Iglesias has named the Planning Board – not the ZBA – as a defendant in this action, even though only the ZBA is responsible for approving a variance. However, she did name Kenneth Corcoran, who is the chairman of the ZBA, as a defendant. That said, Kenneth Corcoran is entitled to summary judgment on all claims asserted against him for the reasons explained in this Opinion.

4

Iglesias Dep. at 73:6-75:13). Moreover, Iglesias was required to bring her state law claim within six-years of the asserted taking, a period that has long since expired. *See Klumpp v. Borough of Avalon*, 202 N.J. 390, 406-07 (2010) (six-year statute of limitations under N.J.S.A. 2A:14 governs inverse condemnation claims). Therefore, not only is Iglesias prohibited under *Williamson* from asserting her taking claim here, any claim she could assert in state court would also be denied as time-barred. Therefore, Iglesias has forfeited her Fifth Amendment claim. *See, e.g., Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87, 95 ("By failing to bring its state claim within the statute of limitations period, [plaintiff] *forfeited* its [Fifth Amendment] claim.") (emphasis in original). *See also*, *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2nd Cir. 2002); *Harbours Pointe of Nashotah, LLC v. Village of Nashotah*, 278 F.3d 701, 706-07; *H. Gamble v. Eau Claire Cnty*., 5 F.3d 285, 286 (7th Cir. 1993).[4]

### B. Tort Claims

Iglesias appears to assert two separate negligence claims against John Candelmo in his capacity as Construction Code Official of the Borough of Cliffside Park. She first alleges that Candelmo "passed inspection on faulty work or construction work that was never performed." She then contends that her driveway was negligently reconstructed; and that when she complained to Candelmo about the condition of the driveway, he ignored her.[5] Iglesias' complaint does not allege that she has suffered any physical injury as a result of the reconstructed driveway; however, Nancy Iglesias alleged in a deposition that she pulled a ligament while walking up the driveway in 2008.

Defendants are entitled to summary judgment on Iglesias' tort claims. Iglesias has asserted tort claims alleging that John Candelmo – a public employee – negligently performed his job as the Construction Code Official of Cliffside Park, thereby causing damage to her property. In New Jersey, any tort claim against a public employee must

---

[4] The *Williamson* rule at issue here does not apply if a plaintiff brings its claim under the Public Use Clause of the Fifth Amendment—the rationale being that because a plaintiff who proves that a government taking is for private use is entitled to an injunction, it does not need to first seek compensation at the state level. *Carole Media LLC v. N.J. Transit Corp.*, 550 F.3d 302, 307-08 (3d Cir. 2008). Even if Iglesias intended to assert a Public Use Clause claim – which is not at all apparent from her complaint – the claim would still be forfeited because it is time-barred. Fifth Amendment takings claim are made pursuant to 42 U.S.C. § 1983. *Cf. Rogin v. Bensalem Tp.*, 616 F.2d 680, 686 (3d Cir. 1980). Therefore, the statute of limitations for a takings claim is the period that New Jersey applies in personal injury cases: two years. *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985); N.J.S.A. 2A:14-2. In light of the timeline of events discussed in the foregoing section, it is clear that Iglesias filed her Fifth Amendment claim after the statute of limitations already expired.

[5] Iglesias has not named Nehme Bros. as a defendant in this action. Therefore, she appears to allege tort claims against only John Candelmo.

conform to the presentation requirements set forth in the New Jersey Tort Claims Act ("TCA").  *See* N.J.S.A. 59:8-3.  Under the TCA, a tort claim against a public employee is "forever barred" if it is filed more than two years after the claim has accrued.  N.J.S.A. 59:8-8.  This two year requirement also applies to property damage claims.  *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 N.J. 84, 1088 (1996).  Nancy Iglesias' testimony suggests that she complained to Candelmo about her driveway soon after construction was complete in 2005.  (N. Iglesias Dep. at 22:11-23:25).  Moreover, in October 2009, Edith Iglesias wrote a letter to an attorney for Cliffside Park asserting that the construction on her driveway caused considerable damage to her property.  (Exhibit to Complt., D.E. 13)  Finally, a company that Edith Iglesias retained to inspect her property sent a letter in April 2010 alleging that the work on her home extension was improper.  (Exhibit to Complt., D.E. 24).  Therefore, at the very latest, Iglesias was required to file her tort claims by April 2012.  She did not file her complaint, however, until December 2012.  Iglesias is therefore "forever barred" from asserting her tort claims, and Defendants are entitled to summary judgment.

### C. Tax Appraisal Claim

Iglesias contends that "the town's appraiser raised [her] property taxes too high…"  Presumably, she asserts this claim against Frank Berardo, who is the Tax Collector for the Borough of Cliffside Park.  Regardless of whether these allegations are grounded in truth, Iglesias cannot assert her tax appraisal claim in this Court.  N.J.S.A. 54:3-21 provides the following:

> [A] taxpayer feeling aggrieved by the assessed valuation of the taxpayer's property…may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal.

Iglesias' tax assessment claim is one that involves the actions of the taxing authority, and therefore she should have asserted it by resorting to the remedial procedures available in New Jersey's tax system.  Indeed, the Supreme Court has held that principles of comity require that federal courts refrain from hearing suits seeking damages for overassessments in state taxes.  *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981).  In light of this precedent, courts in this district have dismissed actions alleging the improper assessment of property taxes at the state level.  *See, e.g., Beach Creek Marina v. Royal Tax Lien Serv., LLC*, No. 09-2949, 2010 WL 2674457, *5 (D.N.J. June 30, 2010).  The Court will do the same here.

### III. MOTION FOR PRO BONO COUNSEL

Iglesias has also moved for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1). Section 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." District courts have "broad discretion" to decide whether requesting counsel is appropriate, may request counsel at any point in the litigation, and may do so *sua sponte*. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). As an initial matter, the Court must first determine if the party seeking counsel has an underlying case with arguable merit in fact and law. *Id.* at 498-99. As explained in the foregoing section, Defendants are entitled to judgment as a matter of law on all of Iglesias' claims.[6] Therefore, appointment of *pro bono* counsel is not warranted. *See Wagenhoffer v. Farrell*, No. 07-2373, 2009 WL 2132432, *3 (D.N.J. July 13, 2009).[7]

### IV. CONCLUSION

For the foregoing reasons, Defendants motions for summary judgment are **GRANTED**. Iglesias' request for the appointment of *pro bono* counsel is **DENIED**. An appropriate order accompanies this decision.

                                                          /s/ William J. Martini  
                                              **WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 4, 2015**

---

[6] Additionally, the basis for Iglesias' *pro bono* counsel request is not that she is unable to afford a lawyer; rather, she alleges that attorneys refuse to take her case because they fear political reprisal. Section 1915(e)(1) clearly conveys that a court may request an attorney to represent a party that is unable to afford counsel. Therefore, the fact that Iglesias has not shown that she is unable to afford an attorney precludes the appointment of *pro bono* counsel.

[7] Iglesias also requests that the Court order Defendants to answer her interrogatories. *See* ECF No. 34. U.S. Magistrate Judge Falk noted in a previous order, however, that Iglesias has failed to identify which Defendants have not complied with her discovery requests. Moreover, the discovery deadline in this case – and the time for Iglesias to make discovery objections – has long since expired. *See* ECF No. 33.